IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FEDERAL EXPRESS CORPORATION,

    Plaintiff,

v.

SHIPPLUG1.COM, INC.,

    Defendant.

Civil Action No. 1:24-cv-22858

**COMPLAINT**

Plaintiff, Federal Express Corporation ("FedEx"), on behalf of itself and as successor by merger to FedEx Corporate Services, Inc. and FedEx Ground Package System, Inc., files this Complaint against the Defendant ShipPlug1.com, Inc. ("ShipPlug"), and for its claims for relief states:

**PRELIMINARY STATEMENT**

1. The pickup, transportation, and delivery of packages in the United States and internationally is a highly competitive business. Carriers who perform these services publish list rates covering base rates, fees, and surcharges. However, the vast majority of packages are shipped pursuant to confidential pricing agreements between carriers and shipping customers which include discounts off these published rates, fees, and surcharges and other incentives specific to that customer ("Customer-Specific Pricing"). A carrier's success and profitability depend on providing each customer with Customer-Specific Pricing that will allow the carrier to maintain a positive customer relationship while still earning sufficient margin to be profitable.

2. At FedEx, it is the job of the Pricing Department to develop strategies and methods for accomplishing the above-described goals, as well as formulating Customer-Specific Pricing offers.

1

Because much of the value of this information comes from its secrecy, as described more fully below, FedEx closely safeguards its pricing information by, for example, ensuring that FedEx employees only have access to the specific information they need to perform their work. FedEx also requires shipping customers to execute non-disclosure agreements to receive Customer-Specific Pricing offers. When FedEx and shipping customers reach an agreement on Customer-Specific Pricing, a Pricing Agreement is executed which requires the customer to keep its Customer-Specific Pricing confidential.

3. While the Pricing Department makes the ultimate decision on what Customer-Specific Pricing will be offered to FedEx shipping customers, FedEx communications with shipping customers related to pricing and service are conducted primarily by FedEx Sales Department employees. Those Sales Department employees can make requests to the Pricing Department on behalf of their shipping customers. To further protect the secrecy of FedEx Customer-Specific Pricing, Sales Department employees only have visibility to Customer-Specific Pricing for shipping customers that are aligned to them. FedEx Sales Department employees sign the Pricing Agreements containing Customer-Specific Pricing, which consistently include a clause requiring the customer to maintain the confidentiality of pricing information.

4. Should a customer have a desire to share its Customer-Specific Pricing with a third party in order for the third party to provide a service to the customer, FedEx requires that the third party, the customer, and FedEx execute a three-way non-disclosure agreement that includes a liquidated damages clause to deter third-party misuse and/or disclosure of Customer-Specific Pricing.

5. ShipPlug was founded and is owned by former FedEx Sales manager Nicholas DiNatale. ShipPlug has employed numerous other former FedEx Sales Department employees, including Ashleigh Rinehart and Jim Stine. Each former FedEx Sales employee is aware of the

measures FedEx takes to maintain the confidentiality of Customer-Specific Pricing and has actual knowledge that FedEx contractually requires FedEx shipping customers to maintain the confidentiality of their Customer-Specific Pricing.

6. ShipPlug's sales team members carry the title of Vice President. Multiple ShipPlug Vice Presidents have taken advantage of the knowledge gained and contacts made while employed by FedEx and used that knowledge and customer contact information to solicit business.

7. ShipPlug is engaged in, among other things, the business of "Carrier Agreement Optimization" a contract consultation service. ShipPlug advertises that it can help shipping customers obtain better pricing on their shipping by comparing their current pricing to the discounts received by similar shipping customers. ShipPlug accomplishes this by requesting that its customers share their parcel carrier Customer-Specific Pricing with ShipPlug. ShipPlug then uses this information to populate a database consisting of Customer-Specific Pricing that ShipPlug has obtained from its other customers. ShipPlug compares the discounts provided by parcel carriers such as FedEx and advises its customers that they should be able to obtain similar discounts.

8. When a carrier provides additional discounts or incentives that a parcel shipping customer requested based on ShipPlug's advice, ShipPlug typically receives a percentage of the incremental savings the customer gained for an agreed period of time.

9. ShipPlug representatives who once worked for FedEx are aware of FedEx's substantial efforts to safeguard Customer-Specific Pricing both internally and externally. Furthermore, ShipPlug representatives know that shipping customers are required to keep their Customer-Specific Pricing confidential because they obtain copies of FedEx Pricing Agreements, which consistently contain confidentiality provisions.

10. That this information is intended to be kept confidential, and is not generally available to the public, is precisely what makes Customer-Specific Pricing valuable to ShipPlug. If the information were generally available to shipping customers, those customers would have no incentive to pay ShipPlug to access the information.

11. FedEx files this lawsuit to stop ShipPlug from executing a business model that is fundamentally based on misappropriation of FedEx's trade secret of Customer-Specific Pricing and from knowingly and willfully inducing FedEx customers to breach confidentiality obligations owed to FedEx.

## PARTIES

12. Federal Express Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Memphis, Tennessee.

13. ShipPlug.com, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Miami, Florida.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this entire action pursuant to 28 U.S.C. § 1331 because it arises, in part, under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836.

15. This Court has jurisdiction over the state law claims asserted in this action under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a), because these claims arise out of the same core set of facts as the federal claim.

16. This Court has general personal jurisdiction over Defendant ShipPlug because, at all relevant times, its principal place of business has been, and is, located in Florida.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because ShipPlug is a resident of this judicial district and a substantial part of the events giving rise to the claims occurred in this jurisdiction.

## FACTS

*FedEx's Proprietary Pricing Information*

18. Effective June 1, 2024, FedEx provides parcel pickup, transportation, and delivery services and employs the Sales and Pricing Department teams. June 1, 2024, is the date the parcel transportation company, FedEx Ground Package System Inc. ("FedEx Ground"), and the shared services company, FedEx Corporate Services, Inc. ("FedEx Services"), merged with the parcel transportation company, Federal Express Corporation ("FedEx Express"), under the Federal Express Corporation name. Prior to that date, the Pricing and Sales Departments were part of FedEx Services, which executed Pricing Agreements with shipping customers as agents for transportation companies FedEx Ground and FedEx Express.

19. FedEx has invested heavily in developing proprietary pricing policies, structures, and models for shipping customers and potential shipping customers. Customer-Specific Pricing includes proposed and actual rates, proposed and actual customer-specific pricing discounts and incentives, revisions to pricing, analysis of pricing, analysis of customer-specific profit margins, and customer-specific shipping information.

20. FedEx has spent many years and significant resources developing proprietary pricing systems and models to determine pricing terms to be made available to specific shipping customers. FedEx also invests in the training of pricing professionals to make strategic pricing recommendations based on a variety of factors and metrics. These pricing models are based on, and could reveal, the cost structure associated with the performance of FedEx services. Therefore,

those individuals responsible for developing pricing information are required to maintain that information in strict confidence.

21. Every aspect of the Customer-Specific Pricing development process operates in strict confidence to protect from disclosure. For example, FedEx's proprietary pricing request system can be accessed only by individuals in Sales authorized to make pricing requests, and they can only access the information necessary for their specific requests. The Pricing Department reviews this information confidentially and provides feedback to Sales Department employees in a confidential manner without disclosing all the considerations the Pricing Department takes into account in developing and obtaining final approval for Customer-Specific Pricing. FedEx further keeps confidential the workflow and approvals associated with different types of pricing requests such that not all pricing employees have access to all pricing information but are limited to the information available to them based on their roles and the shipping customers involved.

22. Sales Department employees only receive pricing information with respect to their own shipping customers. To the extent Sales Department employees service multiple shipping customers, they are not permitted to share any customer's pricing with any other customer or otherwise make pricing information publicly available.

23. FedEx shipping customers and potential shipping customers eligible to receive substantial discounts receive Customer-Specific Pricing offers only upon execution of non-disclosure agreements that require them to maintain pricing offers in strict confidence. Additionally, FedEx Customer-Specific Pricing Agreements contain confidentiality provisions prohibiting shipping customers from disclosing their customized pricing to third parties.

24. The confidentiality of Customer-Specific Pricing is critical to FedEx's ability to remain competitive in the marketplace and thus is of significant value to FedEx. It allows FedEx

to offer aggressive discounts and incentives to gain and maintain shipping customers while allowing FedEx to factor in its costs to serve into Customer-Specific Pricing offers. Combined, this allows FedEx to remain profitable and competitive despite offering significant discounts and incentives.

***ShipPlug's Business Model Depends on Misappropriation of FedEx Customer-Specific Pricing***

25. ShipPlug was founded in 2021 by Nicholas Dinatale, a Sales manager who had recently ended his employment with FedEx Services.

26. Since 2021, ShipPlug claims it has saved its customers $12 million, https://www.shipplug.com/about#company, and Mr. DiNatale asserted in May 2023 that ShipPlug is "on track to earn $25 million in revenue in 2024 with an expected profit of $2 million." https://founderreports.com/interview/shipplug/

27. ShipPlug markets its contract consultation services to prospective clients by touting its "proprietary shipping software" which "benchmarks data off of hundreds of customer rates to find you unique savings opportunities and help you reduce costs." https://www.shipplug.com/about#company.

28. Those "hundreds of customer rates" that ShipPlug uses for benchmarking include the discounted rates provided in FedEx Customer-Specific Pricing Agreements, as well as similar agreements between shipping customers and other parcel carriers such as UPS. As ShipPlug explains on its website, "Because [ShipPlug] negotiate[s] regularly on behalf of hundreds of customers, [ShipPlug] ha[s] access to their invoicing data, which gives [ShipPlug] unique insight into the best rates available." https://www.shipplug.com/faq. ShipPlug, however, has no right to this information and certainly has no right to share this illegally-obtained information with other shipping customers.

29. The fact that Customer-Specific Pricing is confidential, and not publicly available, is what makes the information valuable. If that information were generally available to shipping customers, they would have no need to compensate ShipPlug for the information.

30. ShipPlug induces its customers to do business with ShipPlug and to breach their non-disclosure agreements and Customer-Specific Pricing Agreements with FedEx and other parcel carriers by promising that there will be "no cost [to the shipper] unless you save," https://x.com/_ShipPlug/status/1811079792231395381, as it receives compensation in the form of a percentage of the incremental savings a customer is able to obtain from a carrier after being provided with the benchmarking data illegally compiled by ShipPlug.

31. Because ShipPlug's compensation is driven by rate and surcharge reductions, ShipPlug is motivated to focus shipping customers on hard cost savings and to downplay other incentives FedEx may offer like enhanced services that reduce the customer's overall supply chain costs but would not result in maximum compensation to ShipPlug. This commoditization of FedEx's services is harmful to FedEx's relationship with its shipping customers as it interferes with FedEx's goal of building strong customer relationships by assisting its shipping customers with a broad array of supply chain needs.

## COUNT I

### ACTUAL AND THREATENED MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836

32. The allegations in paragraphs 1 to 31 are incorporated by reference as if set forth fully herein.

33. FedEx's Customer-Specific Pricing Information is a trade secret. It derives independent economic value from not being generally known or ascertainable by proper means. It is the result of years of investment by FedEx and allows FedEx to offer pricing sufficiently

competitive to gain and maintain shipping customers but sufficiently rational that FedEx can earn a profit and stay in business.

34. FedEx takes, and, at all times relevant, has taken reasonable measures to maintain the confidential nature of its Customer-Specific Pricing. FedEx has contracts and policies in place to maintain this confidentiality. Additionally, access to the Customer-Specific Pricing is electronically restricted to authorized employees in a highly tailored way and physical access to the premises is limited to authorized employees. On the limited occasions when Customer-Specific Pricing must be shared with third parties, the scope of Customer-Specific Pricing disclosed is strictly limited to the third party's need to know, and a three-way nondisclosure agreement is required.

35. ShipPlug's core business is based on their improper acquisition of and misappropriation of FedEx (and other carriers') Customer-Specific Pricing Information in multiple ways.

36. ShipPlug first misappropriates the Customer-Specific Pricing by knowingly soliciting the pricing via improper means, *i.e.*, obtaining the Customer-Specific Pricing from FedEx shipping customers that ShipPlug knows have a contractual duty to keep the Customer-Specific Pricing confidential.

37. After improperly obtaining the Customer-Specific Pricing, ShipPlug compiles the Customer-Specific Pricing information of many customers to create benchmarks and then shares this improperly obtained Customer-Specific Pricing information with its other customers that have no authority to see the Customer-Specific Pricing information.

38. ShipPlug uses this misappropriated non-public information to instruct its customers as to what pricing concessions to demand from FedEx.

39. The Customer-Specific Pricing relates to the interstate transportation of packages through FedEx's fully integrated air-ground cargo network and thus is a service used or intended for use in interstate commerce.

40. As a direct and proximate cause of ShipPlug's misappropriation of FedEx's trade secrets, FedEx has suffered, or is reasonably likely to suffer, irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless ShipPlug is enjoined from engaging in any further acts of misappropriation and from continued possession in any form of FedEx Customer-Specific Pricing information.

41. As a direct and proximate result of ShipPlug's willful and malicious misappropriation of FedEx's trade secrets, FedEx has suffered and continues to suffer damages and FedEx is further entitled to damages based on the ShipPlug's unjust enrichment as it improperly receives a percentage of savings for pricing reductions obtained by reliance on misappropriated Customer-Specific Pricing.

**COUNT II**
**ACTUAL AND THREATENED MISAPPROPRIATION OF TRADE SECRETS UNDER THE FLORIDA UNIFORM TRADE SECRETS ACT, FLA. STAT. § 688.002**

42. The allegations in paragraphs 1 to 41 are incorporated by reference as if set forth fully herein.

43. FedEx's Customer-Specific Pricing Information is a trade secret. It derives independent economic value from not being generally known or ascertainable by proper means. It is the result of years of investment by FedEx and allows offer pricing sufficiently competitive to gain and maintain shipping customers but sufficiently rational that it makes sufficient profits to stay in business.

44. FedEx takes, and at all times here relevant, has taken reasonable measures to maintain the confidential nature of its Customer-Specific Pricing. FedEx has contracts and policies in place to maintain this confidentiality. Additionally, access to the Customer-Specific Pricing is electronically restricted to authorized employees in a highly tailored way and physical access to the premises is limited to authorized employees. On the limited occasions when Customer-Specific Pricing must be shared with third parties, the scope of Customer-Specific Pricing disclosed is strictly limited to the third party's need to know and a nondisclosure agreement is required.

45. ShipPlug's core business is based on the misappropriation of FedEx (and other carriers') Customer-Specific Pricing Information in multiple ways.

46. ShipPlug first misappropriates the Customer-Specific Pricing by knowingly soliciting the pricing via improper means, *i.e.*, obtaining the Customer-Specific Pricing from FedEx shipping customers that ShipPlug knows have a contractual duty to keep the Customer-Specific Pricing confidential.

47. After improperly obtaining the Customer-Specific Pricing, ShipPlug compiles the Customer-Specific Pricing information of many customers to create benchmarks and then shares this improperly obtained Customer-Specific Pricing information with its other customers that have no authority to see the Customer-Specific Pricing information.

48. ShipPlug uses this misappropriated non-public information to instruct its customers as to what pricing concessions to demand from FedEx.

49. As a direct and proximate cause of ShipPlug's misappropriation of FedEx's trade secrets, FedEx has suffered, or is reasonably likely to suffer, irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless ShipPlug is enjoined from

engaging in any further acts of misappropriation and from continued possession in any form of FedEx Customer-Specific Pricing information.

50. As a direct and proximate result of ShipPlug's willful and malicious misappropriation, FedEx has suffered and continues to suffer damages arising from ShipPlug's misappropriation of Customer-Specific Pricing and is further entitled to damages based on the ShipPlug's unjust enrichment as it improperly receives a percentage of savings for pricing reductions obtained by reliance on misappropriated Customer-Specific Pricing.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

51. The allegations in paragraphs 1 to 50 are incorporated by reference as if set forth fully herein.

52. ShipPlug solicited FedEx shipping customers, including customers that ShipPlug Vice Presidents were aligned to when employed at FedEx, to sell them a rate negotiation services that are dependent upon the solicited customer providing ShipPlug with FedEx Customer-Specific Pricing.

53. ShipPlug Vice Presidents know that potential customers they are soliciting have Customer-Specific Pricing Agreements with FedEx had agreed, as a condition of obtaining the discounts and incentives associated with Customer-Specific Pricing, to keep it confidential. ShipPlug Vice Presidents know that the confidentiality obligations of these customers are memorialized in writing in Customer-Specific Pricing Agreements.

54. ShipPlug knowingly and intentionally caused, and continues to cause, FedEx shipping customers to breach their confidentiality obligations by inducing them to provide ShipPlug with Customer-Specific Pricing information.

55. ShipPlug's conduct of knowingly and repeatedly causing FedEx shipping customers to breach their confidentiality obligations is the cornerstone of ShipPlug's business model, demonstrating that ShipPlug's conduct was committed with malice or reckless disregard.

56. FedEx has been harmed, and continues to be harmed, by the disclosure of Customer-Specific Pricing to ShipPlug, who then uses this information to undermine FedEx's rational pricing and harm FedEx's relationships with its shipping customers.

## PRAYER FOR RELIEF

WHEREFORE, FedEx demands a trial of all issues and seeks all relief to which it is entitled including (i) a preliminary and permanent injunction requiring ShipPlug to cease its business practice of inducing FedEx shipping customers to share Customer-Specific Pricing with ShipPlug and prohibiting ShipPlug from continuing to use access, disclose, or retain any of FedEx's Customer-Specific Pricing; (ii) money damages; (iii) unjust enrichment damages; (iv) reasonable attorneys' fees; (v) exemplary and punitive damages; (vi) costs; and (vii) such other relief as is just and proper.

DATED: July 26, 2024

Respectfully submitted,

s/ Shelby R. Walton
Shelby R. Walton, Esq. (FL Bar No. 1002662)
FEDERAL EXPRESS CORPORATION
8285 Tournament Drive
Memphis, TN 38125
Telephone: (412) 215-2687
Fax: (901) 468-2555
shelby.walton@fedex.com

*Counsel for Plaintiff,*
*Federal Express Corporation*